IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**RICKY R.,**[1]

       Plaintiff,　　　　　　　　　　　　Civ. No. 6:19-cv-00444-AA

v.　　　　　　　　　　　　　　　　　**OPINION & ORDER**

**COMMISSIONER OF SOCIAL SECURITY**,

       Defendant.

AIKEN, District Judge:

    Plaintiff Ricky R. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

    On October 19, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on September 25, 2014. Tr. 15. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 28, 2018. *Id.* On May 23, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 25. On February 4, 2019, the

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 25, 2014. Tr. 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: obesity; degenerative disc disease of the lumbar spine with spondylosis and canal stenosis affecting L2-L3, L3-L4, and disc protrusions; and diabetes "diagnosed in January 2018 and that was uncontrolled at the time." Tr. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: he can occasionally climb ramps and stairs but never ropes, ladders, or scaffolds; he can occasionally stoop, crouch, crawl, and kneel; he should avoid concentrated exposure to vibration; and he should be able to change position between sitting and standing at 20–30-minute increments if needed. Tr. 19.

At step four, the ALJ found Plaintiff was capable of performing his past relevant work as a trailer salesperson which is light work, but performed at the sedentary level. Tr. 24. As a result, the ALJ found that Plaintiff was not disabled without reaching step five. Tr. 24-25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).

In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly concluding that Plaintiff's impairments did not meet or equal a listed impairment at step three of the sequential analysis; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly weighing the medical opinion evidence. Plaintiff asserts that these errors infected the formulation of the RFC and the ALJ's ultimate determination that Plaintiff was not disabled.

### I.   Step Three Findings

At step three, the ALJ determines whether a claimant's impairment meets or equals one of the impairments listed in the Social Security regulations and deemed so severe as to preclude substantial gainful activity. *Bowen v. Yukert*, 482 U.S. 137, 141 (1987). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only

some of those criteria, no matter how severely, does not qualify." *Id.* Furthermore, a claimant "cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* at 531. Listed impairments are purposefully set at a high level of severity and held to strict standards "because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). At step three, the burden is on the claimant to produce medical evidence sufficient to establish each of the characteristics for the listed impairment. *Yuckert*, 482 U.S. at 146 n.5.

In this case, Plaintiff asserts that his impairments meet or medically equals Listing 1.04A. Listing 1.04A covers "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) of the spinal cord," with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Appendix 1, Subpart P, Listing 1.04A (2018).

The ALJ considered Listing 1.04A, along with the other subsections of Listing 1.04, and concluded that Plaintiff did not meet the requirements for the listing because "the medical record fails to show that the claimant's impairment led to a nerve root compression evidenced by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and a positive straight-leg raising test." Tr. 18. Although Plaintiff asserts that the ALJ's discussion was inadequate and cursory, the Ninth Circuit has held that an ALJ is not required

"as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments," and the ALJ's evaluation of the evidence elsewhere in the opinion will serve as an "adequate statement of the foundations on which the ultimate factual conclusions are based." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (internal quotation marks and citation omitted). Here, the ALJ engaged in a lengthy discussion of the medical evidence in addition to the shorter discussion of requirements of Listing 1.04. Tr. 18-24. This discussion touched directly upon several of the requirements of Listing 1.04A and the Court concludes that the ALJ reasonably determined that Plaintiff had not met the stringent requirements of step three.

## II.     Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm't*, 533 F.3d 1155, 1160. (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements

concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that he cannot sit or stand for "any length of time." Tr. 40. Sitting causes him to experience numbness and back pain while standing causes him to suffer from leg pain and Plaintiff must alternate between the two positions to alleviate his symptoms. *Id.* Plaintiff treats his pain with a heated rice bag and by taking Ibuprofen, which Plaintiff testifies he takes in 1000 milligram does. Tr. 41. Plaintiff also takes Vicodin to manage his pain, but he only uses Vicodin at night because it causes drowsiness. *Id.* Plaintiff also does stretching exercises every morning to loosen up his back. Tr. 46.

In terms of daily activities, Plaintiff has a driver's license and testified that he cannot drive every day, but that he will drive to the post office, the grocery store, or other nearby destinations. Tr. 35-36. Plaintiff does some housework, including washing dishes and laundry, but he does not vacuum or dust. Tr. 42. Plaintiff testified that he does outdoor activities when the sun is out, including washing or vacuuming his car, although he limits his time working to 10 or 15 minute intervals. Tr. 43. Plaintiff is able to shower and dress without assistance, although he testified that reaching his lower legs is difficult. Tr. 45.

Plaintiff testified that he usually does not drive long distances and that flying on a plane for more than two hours exacerbates his back pain. Tr. 42. Plaintiff testified that he traveled to Maui on vacation a week before the hearing, during which time he drove the road to Hana, went to the beach, and went out to dinner. Tr. 43-44. Plaintiff also traveled to Colorado in 2017 to attend a funeral. Tr. 44. Plaintiff testified that two years before the hearing, he traveled to the Caribbean to go on a cruise and that he and his wife will go on a cruise every 3 to 5 years. Tr. 44-45.

Plaintiff works part time managing a rental property for a friend and, in the course of that work, he collects rent from the tenants and "if there is any problems that arise they come to me instead of going to [the owner of the property]" and Plaintiff will "handle any issues there." Tr. 37-38. Plaintiff and his wife also earn income by packaging and shipping "hand held squeedgies" directly to customers. Tr. 37.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record].]" Tr. 20. The ALJ gave several reasons for discounting Plaintiff's subjective symptom testimony.

First, the ALJ noted that Plaintiff's allegations of debilitating symptoms were not "entirely consistent with the medical evidence." Tr. 22. The ALJ noted that physical examinations "found throughout the medical record revealed normal gait, station, muscle strength, balance, and motor function," with no signs of edema or deformities. *Id.* The ALJ noted that Plaintiff's straight leg tests were repeatedly negative and Plaintiff was described as "well-developed, well-nourished, and in no acute distress." *Id.* This is supported by the record. *See* Tr. 246-47 (November 2014, Plaintiff described "moderate" back pain and testing revealed negative straight leg raise test bilaterally, normal gait, no weakness or edema); 255 (October 2015, examination found normal gait, normal balance, intact sensation, no edema or deformities, no tenderness in extremities or spine), 260-61 (December 2015, examination found limited range of motion and moderate tenderness, but negative straight leg raise tests, negative FABER testing, normal gait, normal sensation, and 5/5 strength); 303-04 (September 2016, examination found slightly antalgic gait but Plaintiff reported that his pain was controlled by ibuprofen); 306-07 (October 2017, examination

found normal gait, no edema, Plaintiff reported his pain was controlled by ibuprofen); 316 (January 2018, examination showed normal gait, normal balance, normal motor control with no edema or deformities). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Although Plaintiff did exhibit limitations to his range of motion and positive straight leg tests on other occasions, *see, e.g.*, Tr. 268-70, 273, the ALJ did not unreasonably assess the objective medical evidence in weighing Plaintiff subjective symptom testimony. Nor did the ALJ base his determination solely on the objective medical evidence, as discussed below.

Next, the ALJ noted that the medical record reflected "only conservative treatment options of the claimant's condition," and that "[g]iven the claimant's allegations, one would expect to see more progressive treatment options." Tr. 22. In particular, the ALJ pointed to evidence in the record showing that Plaintiff's use of Vicodin was rare and that no pain contract was required and Plaintiff also "indicated that he rarely used Norco." *Id.* The ALJ also noted records showing that, in October 2017, Plaintiff's "chronic low back pain did not involve radicular pain and was sufficiently controlled by ibuprofen. *Id.* These conclusions are supported by the record. *See* Tr. 250-51 (Plaintiff reported that he used Vicodin "a few times a month," and no pain contract was needed); 246 (Plaintiff reported used Vicodin "a few times a month,"); Tr. 306 (Plaintiff reported "Chronic back pain aggravated by physical labor. He denies any radicular pain but he will use up to thousand milligrams of ibuprofen a day. It does seem to control it. He rarely uses Norco in the evening."). The Ninth Circuit has held that an ALJ may reasonably consider evidence of conservative treatment in assessing a plaintiff's reports of disabling pain. *Tommasetti v. Astrue*,

533 F.3d 1035, 1039-40 (9th Cir. 2008).  In this case, the Court concludes that the ALJ reasonably considered evidence of conservative treatment as undermining Plaintiff's subjective symptom testimony.

Next, the ALJ observed that Plaintiff gave inconsistent statements regarding his limitations. Tr. 22.  As noted, an ALJ may consider inconsistent statements in assessing a plaintiff's credibility. *Ghanim*, 763 F.3d at 1163.  Here, the ALJ pointed to Plaintiff's testimony that he had difficulty traveling and could not sit for a 2-hour period, which was contradicted by his testimony concerning regular long-distance travel including trips to the Caribbean, Colorado, and Hawaii.  Tr. 22.  The ALJ reasonably concluded that Plaintiff's testimony concerning his long-distance travel contradicted his allegations and near-simultaneous testimony about his inability to sit for long periods of time.

Finally, the ALJ concluded that Plaintiff's activities of daily living, which included household chores, shopping, operating a motor vehicle, preparing meals, working as the manager of a rental property, and doing packing/shipping for a company, together "suggest a level of function greater than one alleged by the claimant." Tr. 22.  In addition to Plaintiff's hearing testimony discussed above, Plaintiff submitted a function report in which he stated that he washes dishes, takes out the garbage, takes care of pets, does household maintenance, and prepares meals five nights per week.  Tr. 200-02.  Plaintiff also reported that he watches television and uses his computer "all the time."  Tr. 203.  Even "where claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (internal quotation marks and citation omitted, alterations normalized).  On this

record, the Court concludes that the ALJ reasonably considered Plaintiff's activities of daily living in assessing his subjective symptom testimony.

In sum, the Court concludes that the ALJ gave legally sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's subjective symptom testimony.

### III.     Medical Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly consider the medical opinion of treating physician Mario Seyer, D.O.  The ALJ is responsible for resolving conflicts in the medical record.  *Carmickle*, 533 F.3d at 1164.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

In this case, Dr. Seyer submitted a function report in support of Plaintiff's application for disability benefits. Tr. 674-76.  Dr. Seyer has been Plaintiff's treating physician for 10 years and reported that Plaintiff suffers from back pain, stiffness, and a reduced range of motion as result of lumbar stenosis, bulging discs, and diabetes.  Tr. 674.  Dr. Seyer believed that Plaintiff could occasionally lift 25 pounds and frequently lift 10 pounds; that he could stand for 20 minutes at a time and for up to 4 hours in an 8-hour workday; that he could sit for 20 minutes at a time and sit for up to 4 hours in an 8-hour workday; that he needs to change position frequently; and "may need to lay down, recline, [or] stretch."  Tr. 675.  Dr. Seyer opined that Plaintiff would be limited

to frequent handling and reaching, both overhead and at shoulder height; occasional climbing and balancing; and could never stoop, bend, kneel, crouch, or crawl. *Id.* Dr. Seyer believed that Plaintiff would miss at least two full workdays per month because of "pain issues." Tr. 676.

The ALJ gave "some weight" to Dr. Seyer's opinion, noting that it was "only partially supported by the medical record." Tr. 23. Plaintiff contends that the ALJ erred by failing to include Dr. Seyer's opinion that Plaintiff would miss at least two days of work each month. The ALJ noted, however, that Dr. Seyer's testimony was not consistent with the record as a whole. *Id.* The consistency of a medical opinion with the record as a whole is a valid consideration in weighing the medical opinion evidence. *Ghanim*, 763 F.3d at 1161 (9th Cir. 2014). As discussed in the previous section, the record reveals generally normal findings and functioning and the Court concludes that the ALJ appropriately weighed Dr. Seyer's opinion against the record as a whole.

The ALJ also concluded that Dr. Seyer's opinion was contradicted by Plaintiff's substantial activities of daily living. Tr. 23. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that provider's opinion. *Ghanim*, 763 F.3d at 1162. Plaintiff's daily activities were discussed in the previous section and, although Plaintiff characterizes them as "modest," the Court concludes that the ALJ reasonably found them to be inconsistent with the degree of limitation assessed by Dr. Seyer.

Plaintiff asserts that the ALJ erred by failing to include Dr. Seyer's suggestion that Plaintiff "may need to lay down, recline, or stretch" into the hypothetical question to the vocation expert or into the RFC. The Ninth Circuit has held that an ALJ may exclude medical opinions concerning symptoms "might limit [a claimant's] ability to work on a sustained basis" when the "reports do not show how [claimant's] symptoms translate into specific functional deficits which preclude

work activity." *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999). In this case, the ALJ incorporated Dr. Seyer's opinion that Plaintiff would need to change position into the RFC but was not obliged to include Dr. Seyer's opinion about Plaintiff possibly needing to laying down, recline, or stretch, which was phrased in conditional terms and did not provide concrete limitations.

In sum, the Court concludes that the ALJ gave sufficient reasons for assigning reduced weight to Dr. Seyer's opinion. As previously noted, the Court has concluded that the ALJ also gave sufficient reasons for discounting Plaintiff's subjective symptom testimony. These alleged errors did not, therefore, infect the ALJ's formulation of the RFC or the ALJ's conclusions at step four of the sequential analysis as Plaintiff contends.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___7th___ day of February 2022.

       /s/Ann Aiken
       ANN AIKEN
       United States District Judge